**UNITED STATES of America,**
**Appellee,**

v.

**Silverio RAMIREZ and Angelica Vitug**
**Defendants–Appellants.**

Docket No. 03–1262–CRL,
04–0726–CRCON.

United States Court of Appeals,
Second Circuit.

Aug. 23, 2005.

Norman Trabulus, Garden City, NY, for Silverio Ramirez.

Theodore S. Green, Green & Willstatter, White Plains, NY, for Angelica Vitug.

Eric B. Bruce, Assistant United States Attorney (Katherine Polk Failla, Assistant United States Attorney, on the brief), for David. N. Kelley, United States Attorney for the Southern District of New York, for Appellee.

Present: WALKER, Chief Judge, CARDAMONE, and B.D. PARKER, Circuit Judges.

## SUMMARY ORDER

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the District Court be and it hereby is AFFIRMED in part, and REMANDED in part.**

Defendants–Appellants Silverio Ramirez and Angelica Vitug appeal from judgments of the United States District Court for the Southern District of New York (Wood, *J.*), convicting them of twenty-five counts and fourteen counts, respectively, of conspiracy to commit the offenses of mail fraud, visa fraud, and making false statements to an agency of the United States (18 U.S.C. § 371), visa fraud (18 U.S.C. § 1546), making false statements to an agency of the United States (18 U.S.C. § 1001), and mail fraud (18 U.S.C. § 1341). Ramirez was sentenced principally to sixty-three months' imprisonment, to be followed by a term of supervised release of three years, and was ordered to pay $265,371.75 in restitution. Vitug was sentenced principally to five months' imprisonment, to be followed by three years' supervised release. Familiarity with the relevant facts,

procedural history, and legal issues is presumed.

Both Appellants challenge their convictions on several grounds. Ramirez also challenges the imposition of certain enhancements at his sentencing. This summary order disposes of all of their claims, except Vitug's claim that venue was not properly laid as to some of the substantive counts of her indictment. We treat that claim in a separate opinion. Having concluded that the Appellants' objections lack merit, we affirm in part, and remand for proceedings consistent with *United States v. Crosby*, 397 F.3d 103 (2d Cir.2005), with respect to Ramirez's sentence.

## I.

Appellants contend that the warrants that issued in May 2001 for the search of their shared New Jersey office and Ramirez's New York office were not supported by probable cause because the information in the search warrant affidavits was stale. The facts in an affidavit supporting a search warrant must be close enough in time to the issuance of a warrant and the search itself so that probable cause can be said to have existed at the time of the search. *See United States v. Wagner*, 989 F.2d 69, 75 (2d Cir.1993); *United States v. Rowell*, 903 F.2d 899, 903 (2d Cir.1990). Where the criminal activity is alleged to be ongoing, "the passage of time is ... but one factor to be considered, along with the kind of property sought," "the nature of the criminal activity," and the "length of the criminal activity." *United States v. Singh*, 390 F.3d 168, 181–82 (2d Cir.2004).

█ Even assuming the warrants were stale, the evidence was admissible under the "good faith exception" to the Fourth Amendment. Evidence seized pursuant to a warrant is admissible even if the warrant lacks probable cause as long as the executing officers relied upon the warrant in " 'objective good faith.' " *United States v. Moore*, 968 F.2d 216, 222 (2d Cir.1992) (quoting *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)). "In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." *Leon*, 468 U.S. at 921, 104 S.Ct. 3430. Here, two different magistrates in two different jurisdictions found that the affidavits set forth probable cause, and the affidavits supporting the warrants were long and detailed. *See Moore*, 968 F.2d at 222 (finding that officers did not have reason to question the warrant when "the warrant application ... was not a 'bare bones' affidavit") (internal citation omitted). On these facts, the good faith exception clearly applies, and we affirm the District Court's denial of Appellants' suppression motion. Appellants' argument that the good faith exception does not apply because the searching officers exceeded the scope of the warrants is without merit.

## II.

█ Vitug also asserts that there was insufficient evidence to support her conviction for mail fraud under 18 U.S.C. § 1341, because the government failed to meet its burden of proving that she intended to defraud Ramirez's law clients by falsely promising them employment. The government was required to prove that Vitug specifically intended to inflict harm on the victim through a "scheme to defraud." *United States v. Walker*, 191 F.3d 326, 334 (2d Cir.1999). A defendant's intent to cause injury "may be inferred when the scheme has such effect as a necessary result of carrying it out," *United States v. Regent Office Supply Co.*, 421 F.2d 1174, 1181 (2d Cir.1970) (internal quotation

marks omitted), and "the government is not required to prove that an intended victim was actually defrauded to establish a violation." *United States v. Starr*, 816 F.2d 94, 98 (2d Cir.1987).

Viewing the evidence in the light most favorable to the prosecution, *see United States v. Reyes*, 302 F.3d 48, 52 (2d Cir. 2002), the jury could have readily concluded that real jobs did not exist for Ramirez's clients, and therefore, a scheme to defraud existed. The evidence indicated that Vitug never intended to deliver Ramirez's clients the jobs she claimed for them in the immigration documents. There is no question that Ramirez's clients would have been harmed by such conduct, as their visas were worthless if they were based on jobs that did not actually exist. Moreover, several witnesses testified that they were actually defrauded. Accordingly, there was ample evidence for the jury to find beyond a reasonable doubt that Vitug had the specific intent to defraud. *See id.* at 52.

### III.

Both Ramirez and Vitug argue that their due process rights were violated because the jury rendered its verdict before receiving a transcript it had requested. In *United States v. Young*, 140 F.3d 453, 457 (2d Cir.1998), we held that where defense counsel did not object to the announcement of the verdict before the jury's request to have part of the charge read back was honored, it was not plain error for the court to permit the jury to announce its verdict. *Young* squarely controls and requires affirming the District Court's denial of Appellants' motion for judgment of acquittal with regard to their due process claim.

### IV.

Ramirez challenges the District Court's application of several enhance-ments under the Sentencing Guidelines. Ramirez's sentence was correctly calculated under the Guidelines. At sentencing, Ramirez explicitly abandoned his objection to the vulnerable victim enhancement, U.S.S.G. § 3A1.1, which, in any event, was properly applied insofar as his victims were illegal immigrants who had little access to information about how to legalize their status and were desperate to do so. *See United States v. Patasnik*, 89 F.3d 63, 72 (2d Cir.1996) (affirming vulnerable victim enhancements for defendants who targeted fraudulent loan scheme at persons who were financially desperate). The sophisticated means enhancement, U.S.S.G. § 2F1.1(b)(6)(C), was also correctly applied, for Ramirez used his specialized skills as an immigration attorney to perpetrate a complex fraud. The District Court also did not clearly err in applying an enhancement under U.S.S.G. § 2F1.1(b)(1) for loss exceeding $200,000; it was appropriate for the District Court to estimate the loss of the non-testifying defendants. *See United States v. Sutton*, 13 F.3d 595, 599–600 (2d Cir.1994) (per curiam).

However, because the District Court sentenced Ramirez under the view that the Guidelines were mandatory rather than advisory, *see United States v. Booker*, —— U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), we remand his case to the District Court for further proceedings in conformity with *United States v. Crosby*, 398 F.3d 103. Any appeal taken from the District Court following this remand can be initiated only by filing a new notice of appeal. *See* Fed. R.App. P. 3, 4(b).

Accordingly, the judgment of the District Court is hereby AFFIRMED in part and REMANDED in part.